1

2

3                                                          O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   ELEMENTS SPIRITS, INC., a      )   Case No. CV 15-02692 DDP (AGRx)
     California corporation;        )
12   FABRICA DE TEQUILAS FINOS      )   **ORDER DENYING IN PART AND**
     S.A. De C.V., a Mexican        )   **GRANTING IN PART MOTION TO**
13   corporation; WORLDWIDE         )   **DISMISS COUNTERCLAIMS**
     BEVERAGE IMPORTS, LLC, a       )
14   Nevada limited liability       )   [Doc. No. 34]
     company,                       )
15                                  )
                     Plaintiffs,    )
16                                  )
                                    )
17        v.                        )
                                    )
18   ICONIC BRANDS, INC., a         )
     California corporaiton;        )
19   GRACE KIM BRANDI, an           )
     individual,                    )
20                                  )
                     Defendants.    )
21   _____)

22        Presently before the Court is Plaintiffs and Counterdefendants

23   Elements Spirits, Inc., Fabrica de Tequilas Finos S.A. de C.V., and

24   Worldwide Beverage Imports, LLC's Motion to Dismiss certain

25   counterclaims from Defendants and Counterclaimants Iconic Brands,

26   Inc. and Grace Kim Brandi's First Amended Counterclaim.  Having

27   heard oral arguments and considered the parties' submissions, the

28   Court adopts the following order.

**I.     BACKGROUND**

Plaintiff and Counterdefendant Elements Spirits, Inc.
("Elements") sells KAH brand tequila.  (First Am. Countercl. at 5.)
The tequila is bottled in painted, skull-shaped glass bottles meant
to resemble "'calaveras,' the decorated sugar skulls associated
with 'Dia de los Muertos.'"  (Id. at 4-5.)  Defendant and
counterclaimant Grace Kim Brandi ("Brandi") formed Elements in
November 2009, and Elements launched KAH Tequila in 2010.  (Id. at
4-5.)  In March 2010, Elements and Brandi were sued by Globefill,
Inc. for trade dress infringement over the skull-shaped bottles.
(Id. at 5.)

In June 2010, Elements sold 51% of its shares to Worldwide
Spirits, a company Defendants describe as "closely related to"
Plaintiff and Counterdefendant Worldwide Beverage Imports, LLC
("Worldwide").  (Id. at 5.)  In April 2011, Brandi was removed as
an officer and director of Elements, but she remained a minority
shareholder of the company.  (Id. at 5-6.)  In August 2011, Brandi
registered copyrights to the tequila bottle designs in her name.
(Id. at 6, exs. 1-5.)

In November 2013, during a mediation ordered in the Globefill
trademark litigation, Elements and Brandi entered into a "Binding
Agreement" in which "Brandi agreed to license her copyrighted
designs to Elements."  (Id. at 7.)  In exchange, Elements agreed to
pay for the defense of the Globefill suit, acknowledge Brandi as an
Elements shareholder, "conduct a proceeding to determine who [were]
the shareholders of Elements," "acknowledge Brandi as the creator
of KAH tequila brand and bottles," "acknowledge the validity of
Brandi's copyrights," and "provide annual statements of the

1  distribution status for the Elements shareholders." (<u>Id.</u> at 7-8.)

2      Sometime after entering into the agreement, relations

3  deteriorated between Brandi and Plaintiffs.  (<u>See</u> <u>id.</u> at 8-11.)

4  Defendants allege that Plaintiffs failed to follow through with the

5  Binding Agreement.  (<u>Id.</u> at 8-10.)  So Brandi started a new

6  company, Defendant and Counterclaimant Iconic Brands, Inc.

7  ("Iconic"), and began selling another tequila using her copyrighted

8  designs.  (<u>Id.</u> at 11.)  Elements, Fabrica de Tequilas Finos S.A. de

9  C.V. ("Finos"), and Worldwide (collectively, "Plaintiffs" and

10 "Counterdefendants") then brought this case against Iconic and

11 Brandi (collectively, "Defendants" and "Counterclaimants") for

12 various claims, including trademark and trade dress infringement,

13 breach of contract, and business torts.

14      Iconic and Brandi responded with a counterclaim (now First

15 Amended Counterclaim or "FAC") against Plaintiffs, two of

16 Plaintiffs' corporate officers (Luz Maria Cabo Alvarez and Delia

17 Rodriguez Cabo), and two distributors of Plaintiffs' tequila,

18 Aveniu Brands, Inc. and Wine Warehouse.  The counterclaims allege

19 (1) federal copyright infringement; (2) fraud in the inducement;

20 (3) breach of contract; (4) declaratory relief for rescission of

21 the Binding Agreement; (5) account stated; and (6) accounting.

22      Plaintiffs have now filed a Motion to Dismiss counterclaims

23 (2) fraud in the inducement, (5) account stated, and (6)

24 accounting.

25 **II.  LEGAL STANDARD**

26      A 12(b)(6) motion to dismiss requires a court to determine the

27 sufficiency of the plaintiff's complaint and whether or not it

28 contains a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under
Rule 12(b)(6), a court must (1) construe the complaint in the light
most favorable to the plaintiff, and (2) accept all well-pleaded
factual allegations as true, as well as all reasonable inferences
to be drawn from them.  See Sprewell v. Golden State Warriors, 266
F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d
1187 (9th Cir. 2001); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th
Cir. 1998).

In order to survive a 12(b)(6) motion to dismiss, the
complaint must "contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  However,
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."  Id. at
678.  Dismissal is proper if the complaint "lacks a cognizable
legal theory or sufficient facts to support a cognizable legal
theory."  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097,
1104 (9th Cir. 2008); see also Twombly, 550 U.S. at 561-63
(dismissal for failure to state a claim does not require the
appearance, beyond a doubt, that the plaintiff can prove "no set of
facts" in support of its claim that would entitle it to relief).  A
complaint does not suffice "if it tenders 'naked assertion[s]'
devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678
(quoting Twombly, 550 U.S. at 556).  "A claim has facial
plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged."  Id.  The Court need not accept

4

1   as true "legal conclusions merely because they are cast in the form

2   of factual allegations." Warren v. Fox Family Worldwide, Inc., 328

3   F.3d 1136, 1139 (9th Cir. 2003).

4   **III. DISCUSSION**

5       **A.   Fraudulent Inducement Counterclaim**

6       Plaintiffs argue that the fraudulent inducement counterclaim

7   should be dismissed because the FAC fails to meet Rule 9(b)'s

8   particularity requirement by not pleading sufficient facts to

9   support the claim. (Mot. Dismiss at 5-6.) Defendants argue the

10  FAC alleges that Elements induced Brandi to agree to the "Binding

11  Agreement" but had no intention of performing the terms of the

12  agreement, thus sufficiently pleading fraud under Rule 9(b).

13  (Opp'n Mot. Dismiss at 6:1-3.) Plaintiffs respond that the

14  pleading is conclusory and fraudulent intent cannot be proven by

15  mere subsequent nonperformance of a contract. (Reply Supp. Mot.

16  Dismiss at 2-3.)

17      Federal Rule of Civil Procedure 9(b) requires a party to state

18  with "particularity the circumstances constituting fraud or

19  mistake." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading

20  must identify the who, what, when, where, and how of the misconduct

21  charged, as well as what is false or misleading about [the

22  purportedly fraudulent] statement, and why it is false." Cafasso

23  v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir.

24  2011) (internal quotation marks and citations omitted). The

25  purpose of Rule 9(b)'s requirements is to provide the defending

26  party with notice of the particular averment of fraud so as to

27  allow the party to fully defend against the claim. See Bly-Magee

28  v. California, 236 F.3d 1014, 1019 (9th Cir. 2001).

1    Here, Brandi's theory for her fraud in the inducement claim is
2    that Elements, acting through its president and officer Timothy
3    Owens, convinced Brandi to enter into the Binding Agreement so
4    Elements could continue using Brandi's copyrighted designs in the
5    tequila bottles, but that Elements never intended to perform the
6    terms of the Agreement. (First Am. Countercl. at 8-10, 13-14;
7    Opp'n Mot. Dismiss at 5-6.) Section IV of the FAC details Brandi's
8    allegations that support a claim of fraud against Elements. (First
9    Am. Countercl. at ¶¶ 22-27.) Brandi claims that after she licensed
10   her copyrights to Elements in the Binding Agreement, Elements
11   "ceased acknowledging Brandi as the creator of KAH . . .; . . .
12   failed to conduct the promised proceeding to determine the
13   shareholder status of the company; and . . . failed to provide any
14   annual statements of shareholders' distribution status for 2013 or
15   2014," all in violation of the Binding Agreement. (First Am.
16   Countercl. at ¶ 26.)

17   Additionally, the FAC points to Mr. Owens' declaration to this
18   Court in a prior preliminary injunction hearing, where Mr. Owens
19   stated that "Elements did not believe Brandi's copyrights were
20   valid" at the time Mr. Owens signed the Binding Agreement on
21   Elements' behalf. (First Am. Countercl. at 13.) Brandi argues
22   that this statement demonstrates that Elements entered into the
23   Binding Agreement without intending to perform its end of the
24   bargain.

25   Whether this argument ultimately succeeds is not the question
26   in a motion to dismiss based on Rule 9(b); instead, Brandi need
27   only put Elements on notice of the specific averment of fraud.
28   Here, the FAC contains sufficient pleading to put Elements on

1  notice of Brandi's specific averment of fraud against the company
2  in terms of who (Elements and Owens), what (not intending to follow
3  through on the Binding Agreement and abide by the terms), where (in
4  the Binding Agreement), when (at the Globefill mediation), why (to
5  get licenses to the copyrights), and how (promising to perform the
6  Binding Agreement), which is all the rule requires.

7      Elements also contends that Brandi's claim must fail because
8  she has not alleged any actions that constitute fraud.  The "mere
9  failure to perform a contract does not constitute fraud," but "a
10 promise made without the intention to perform can be actionable
11 fraud."  <u>Richardson v. Reliance Nat'l Indem. Co.</u>, No. C 99-2952
12 CRB, 2000 WL 284211, at *4 (N.D. Cal. Mar. 9, 2000) (internal
13 quotations and citations omitted).  Brandi's theory is not that
14 Elements merely failed to perform the contract. Rather, Brandi
15 pleads facts to show that Elements entered into the Binding
16 Agreement with no intention of actually performing its side of the
17 agreement.  Altogether, the FAC's allegations demonstrate that
18 Brandi has pled sufficient facts to support her claim that Elements
19 entered into the Binding Agreement without the intention to perform
20 its obligations, which constitutes a proper allegation of fraud.

21     **B.   Account Stated Counterclaim**

22     Iconic has an account stated counterclaim against Finos,
23 alleging that Finos did not pay a Chinese manufacturer of the KAH
24 tequila bottles for the manufacturer's work. (First Am. Countercl.
25 at 16; Opp'n Mot. Dismiss at 7:11-14.)  Iconic alleges that the
26 manufacturer, Qingdao ABAC Glass Co., Ltd. ("ABAC Glass"), assigned
27 its claim against Finos for $564,000 to Iconic. (First Am.
28 Countercl. at 16; Opp'n Mot. Dismiss at 7:21-22.)  Finos argues the

Court lacks jurisdiction over this counterclaim because the counterclaim does not arise out of the same transaction or occurrence as the claims in the complaint.  (Mot. Dismiss at 8-9.) In response, Iconic argues that the "complaint's principal issues all relate to the KAH tequila bottle," so the Court should exercise jurisdiction over the counterclaim as it arises out of the same transactions and occurrences as the complaint.  (Opp'n Mot. Dismiss at 8.)  Further, doing so "best serves the interests of judicial economy."  (Id.)

### 1.  Compulsory Counterclaim

A counterclaim may be either compulsory or permissive.  Fed. R. Civ. P. 13.  If a counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," the counterclaim is compulsory.  Fed. R. Civ. P. 13(a)(1)(A).  Because a compulsory counterclaim arises out of the same transaction as the related claim, the two can be viewed as part of the same case or controversy.  Campos v. Western Dental Servs., Inc., 404 F. Supp. 2d 1164, 1167 (N.D. Cal. 2005).  Thus, courts do have supplemental jurisdiction over compulsory counterclaims.

To determine whether the claim and counterclaim arise out of the same transaction, the court applies a "logical relationship" test to "analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit." Pochiro v. Prudential Ins. Co. of America, 827 F.2d 1246, 1249 (9th Cir. 1987) (citation omitted).

8

1    The account stated counterclaim requires the Court to inquire

2  into an agreement between Finos and ABAC Glass regarding the

3  manufacturing of the KAH tequila bottles and the alleged subsequent

4  failure to pay.  The pertinent agreement to the claims in the

5  complaint is the Binding Agreement between Brandi and Elements,

6  which is an independent transaction and occurrence from the

7  agreement between Finos and ABAC Glass.  Therefore, the

8  counterclaim is not compulsory and is instead permissive.

9           **2.   Permissive Counterclaim**

10    Having determined that Iconic's account stated counterclaim is

11 permissive, the question remains whether this Court may exercise

12 supplemental jurisdiction over the counterclaim.  The Ninth Circuit

13 has yet to express an opinion on whether permissive counterclaims

14 require an independent jurisdictional basis beyond 28 U.S.C. §

15 1367(a)'s "same case and controversy" requirement.  Sparrow v.

16 Mazda American Credit, 385 F. Supp. 2d 1063, 1066-67 (E.D. Cal.

17 2005).  The Second and Seventh Circuits, however, have held that 28

18 U.S.C. § 1367(a) allows district courts to exercise supplemental

19 jurisdiction over either compulsory or permissive counterclaims.

20 Jones v. Ford Motor Credit Co., 358 F.3d 205, 212-13 (2d Cir.

21 2004);  Channell v. Citicorp Nat'l Servs., Inc., 89 F.3d 379, 384

22 (7th Cir. 1996).[1]  The "same case and controversy" requirement for

23 supplemental jurisdiction under 28 U.S.C. § 1367(a) requires only a

24

25        [1] As other courts have noted, the extension of supplemental
   jurisdiction to both compulsory and permissive counterclaims
26 renders the compulsory/permissive analysis somewhat redundant.  See
   Sparrow, 385 F. Supp. 2d at 1070 n.4.  Those circuits which have
27 approved the exercise of supplemental jurisdiction have also
   dispensed with the compulsory/permissive counterclaim inquiry.  Id.
28 at 1067.

1 "loose factual connection between the claims." <u>Channell</u>, 89 F.3d

2 at 385.

3      Courts in this circuit have found they have discretion to

4 exercise supplemental jurisdiction over certain permissive

5 counterclaims.  <u>See, e.g.</u>, <u>Marlin v. Chase Cardmember Servs.</u>, No.

6 1:09cv0192 AWI DLB, 2009 WL 1405196, *4 (E.D. Cal. May 19,

7 2009)(finding the court had discretion to exercise supplemental

8 jurisdiction over a breach of contract counterclaim on an

9 underlying debt in a Fair Debt Collection Practices Act case, but

10 declining to exercise such discretion).

11      Here, the complaint and counterclaim do share a loose factual

12 connection: the claims and counterclaims all revolve around the KAH

13 tequila bottles.  Further, it is in the interest of judicial

14 economy to keep all the claims related to the parties and the KAH

15 tequila bottles together in one case.  Therefore, the court in its

16 discretion will exercise supplemental jurisdiction over this claim.

17      **C.   Accounting Counterclaim**

18      Brandi seeks an accounting against all Plaintiffs for profits

19 earned by the use and sale of Brandi's copyrights, the sales of KAH

20 tequila to determine the amount of royalties that should have been

21 paid to Elements, the attorney fees that are offsets against any

22 royalties earned by Elements, and the value of Brandi's stock in

23 Elements.  (First Am. Countercl. at 17.)  Plaintiffs argue that the

24 Copyright Act preempts Brandi's accounting claim.  (Mot. Dismiss at

25 10:20-21.)  Brandi responds that the accounting claim is not

26 preempted because the accounting claim is not based solely on her

27 claim for copyright infringement but is also based on her breach of

28 contract and fraud claims.  (Opp'n Mot. Dismiss at 10.)

The Copyright Act preempts rights under common law or state statutes that "are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(a). The Ninth Circuit has adopted a two-part test for copyright preemption. First, the court "determine[s] whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." Laws v. Sony Music Ent'mt, Inc., 448 F.3d 1134, 1137 (9th Cir. 2006) (footnotes omitted). Second, if the court determines the subject matter is within copyright, then the court "determine[s] whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." Id. at 1137-38.

### 1.    Subject Matter of Copyright

First, the accounting claim must relate to subject matter within the scope of the Copyright Act for preemption to apply. Section 102 of the Copyright Act extends copyright protection to "original works of authorship fixed in any tangible medium of expression," including "sculptural works." 17 U.S.C. § 102(a).

Here, the first accounting claim in the FAC is for "all of counterdefendants' profits earned as a result of their use and sale, authorized and unauthorized, of counterclaimant Brandi's copyrights." (First Am. Countercl. at 17). By its terms, this claim relates to copyrightable subject matter—namely, Brandi's copyrights in her sculptural works, the calavera-esque tequila bottles.

The other three accounting claims are for the "sales of KAH tequila, internationally, to determine what royalties should have

11

been paid to Elements"; the "attorney fees incurred and paid by Elements or on its behalf that are being claimed as offsets against royalties earned"; and "Elements' value and the value of counterclaimant Brandi's stock in Elements." (First Am. Countercl. at 17). These latter three claims are not grounded in the subject matter of copyright because their subject matters are tequila sales, attorneys fees, and values of a company and its stocks, none of which are copyrightable. Thus, these three claims are not within the scope of the Copyright Act, but the accounting for the Plaintiffs' use of Brandi's copyrights is within the subject matter of copyright.

### 2. Exclusive Rights of Copyright

Second, the right asserted in the state law action must be equivalent to a right protected under the Copyright Act for preemption to apply. Section 106 in the Copyright Act outlines the exclusive rights of a copyright owner, including reproduction of the copyrighted work, preparation of derivative works, distribution of the work, and public performance and display of the work. 17 U.S.C. § 106(1)-(5). "To survive preemption, the state cause of action must protect rights that are qualitatively different from the rights protected by copyright: the complaint must allege an 'extra element' that changes the nature of the action." Grosso v. Miramax Film Corp., 383 F.3d 965, 968 (9th Cir. 2004), amended on denial of reh'g 400 F.3d 658 (9th Cir. 2004).

An accounting claim under California law requires a plaintiff to show (1) a fiduciary relationship between the parties or (2) complicated accounts such that "an ordinary legal action demanding

1  a fixed sum is impracticable." <u>Meixner v. Wells Fargo Bank, N.A.</u>,

2  —F. Supp. 3d—, 2015 WL 1893514 (E.D. Cal. 2015).

3       An accounting between co-owners of a copyright is not

4  preempted by the Copyright Act because co-owners cannot sue each

5  other for infringement as they each have equal right to exploit the

6  work.  <u>See</u> <u>Oddo v. Ries</u>, 743 F.2d 630, 633, 635 (9th Cir. 1984).

7  But where the cause of action for accounting is "rooted primarily

8  on contentions that [the other party] infringed on [the claimant's]

9  copyrighted work," then the Copyright Act does preempt the state

10 law claim.  <u>Motown Record Corp. v. George A. Hormel & Co.</u>, 657 F.

11 Supp. 1236, 1241 (C.D. Cal. 1987).

12      Here, Brandi's first accounting claim is based on Plaintiffs'

13 use of her copyrights.  The validity of Brandi's copyrights as well

14 as the existence of a valid licensing relationship is disputed in

15 the complaint as well as the counterclaim. (<u>See</u> Compl. at 19-22;

16 First Am. Countercl. at 11-13, 15.)  But what is most problematic

17 for this accounting claim is that Brandi makes a copyright

18 infringement claim against Plaintiffs, claiming that any license to

19 use her works was "cancelled" and that Plaintiffs "have made and

20 will make substantial profits and gains to which they are not

21 entitled" from such infringing use. (First Am. Countercl. at 12.)

22 Therefore, the accounting claim for profits derived from using

23 Brandi's copyrighted material is preempted by the Copyright Act

24 because it depends upon the resolution of the copyright

25 infringement claim.

26          **3.   Lack of Legal Basis for Accounting**

27      Plaintiffs also argue that Brandi lacks a "legal basis" for

28 her accounting claims to determine the value of Elements and its

1  shares of stock.  (Mot. Dismiss at 11.)  In their Reply, Plaintiffs
2  further argue that the valuation claim and the other accounting
3  claims for attorneys fees and tequila sales are "derivative" and so
4  cannot be brought by Brandi as a direct suit.  (Reply Supp. Mot.
5  Dismiss at 6-7.)  To support her need for an accounting, Brandi
6  responds by pointing to the counterclaims for breach of contract
7  and fraud that are based in part on Plaintiffs' failure to provide
8  the requested information as promised in the Binding Agreement.
9  (Opp'n Mot. Dismiss at 10-11.)

10      Plaintiffs' argument is without merit because Brandi need not
11  bring these claims as a shareholder derivative suit.  Brandi
12  alleges fraud in the inducement and breach of contract in relation
13  to Plaintiffs' actions after entering into the Binding Agreement.
14  It is upon these grounds that Brandi brings the accounting claims
15  for attorneys fees, tequila sales, and valuation of Elements and of
16  the shares in Elements.  Brandi alleges that Plaintiffs' failure to
17  account as requested is a material breach of the Binding Agreement,
18  thus leading to Brandi's cancellation of any copyright licenses in
19  that Agreement.  (See First Am. Countercl. at 10-11, 14, 17.)
20  Further, the lack of Plaintiffs' financial information prevents
21  Brandi from calculating any damages that could be owed for that
22  alleged breach and fraud.  See Meixner, –F. Supp. 3d–, 2015 WL
23  1893514; Teselle v. McLoughlin, 173 Cal. App. 4th 156, 180
24  (2009)("[T]he purpose of the accounting is, in part, to discover
25  what, if any, sums are owed to the plaintiff.")  Thus, Brandi
26  alleges a direct injury that is not required to be brought as a
27  derivative suit and that does have a legal basis at this motion to
28  dismiss stage.

**IV.   CONCLUSION**

     For the reasons stated above, Plaintiffs' Motion to Dismiss is DENIED as to counterclaims (2) fraudulent inducement, (5) account stated, and part of (6) accounting.  The Motion is GRANTED with prejudice as to the part of claim (6) accounting that is preempted by the Copyright Act.


IT IS SO ORDERED.



Dated: September 17, 2015

                              HON. DEAN D. PREGERSON
                              United States District Judge

15